IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Enron Corporation Securities, Derivative & "ERISA" Litigation | § § § § | MDL-1446 |
| MARK NEWBY, ET AL., | § § | |
| Plaintiffs | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3624 CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § § | |
| Defendants | § § | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., Individually and On Behalf of All Others Similarly Situated, | § § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-04-0088 |
| MILBANK, TWEED, HADLEY & McCLOY, ET AL., | § § § | |
| Defendants | § § | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-04-0087 |
| ROYAL BANK OF CANADA, ROYAL BANK HOLDING INC., ROYAL BANK DS HOLDING INC., RBC DOMINION SECURITIES INC., RBC DOMINION SECURITIES LTD., RBC HOLDINGS (USA) INC., AND RBC DOMINION SECURITIES CORP., | § § § § § § § § | |
| Defendants | § § | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Individually and on behalf of all others similarly situated, | § § § § § | |

```
            Plaintiffs,       §
                              §
VS.                           §    CIVIL ACTION NO. H-03-5528
                              §
TORONTO-DOMINION BANK, ET AL.,§
                              §
            Defendants.       §
```

### OPINION AND ORDER

Pending before the Court in H-01-3624 is the *Newby* Financial Institution Defendants'[1] motion to consolidate for trial the *Newby* action and two others, H-04-0087 (the "RBC Action") and H-03-5528 (the "RBS/TD Action"), pursuant to Fed. R. Civ. P. 42(a) and Local Rule 7.6 (instrument #4989).[2]

In addition, Lead Plaintiff the Regents of the University of California ("Lead Plaintiff" or "the Regents") has filed a motion to consolidate *Newby* and H-04-0088 for trial (#69 in H-04-0088 (the "Goldman Sachs Action"); #5022 in H-01-3624).

### I.  Standard for Consolidation
### under Federal Rule of Civil Procedure 42(a)

Rule 42(a) provides,

> When actions involving a common question of
> law or fact are pending before the court, it
> may order a joint hearing or trial of any or
> all the matters in issue in the actions; it
> may order all the actions consolidated; and it

---

[1] The *Newby* Financial Institution Defendants bringing this motion are Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC), Credit Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.), Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corp.), (collectively "CSFB"), and Merrill Lynch & Co., Inc. And Merrill Lynch, Pierce, Fenner & Smith, Inc. (collectively, "Merrill").

[2] The Court has previously granted an amended motion of Barclays PLC, Barclays Bank PLC and Barclays Capital Inc. (collectively, "Barclays") to join previously filed papers (#5302), relating in part to #4989, so it is also a Movant here.

> may make such orders concerning proceedings
> therein as may tend to avoid unnecessary costs
> or delay.

The district court has broad discretion in determining whether two or more actions have common questions of law and fact and whether consolidation would save time and money. *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761-62 (5th Cir. 1989). The district court may order consolidation even where the parties are opposed to it. *In re Air Crash Disaster at Florida Everglades on Dec. 29, 1972 v. Eastern Air Lines, Inc.*, 549 F.2d 1006, 1013 (5th Cir. 1977). The court's determination may also "take precedence over the desires of counsel." *Id.* at 1014.

Factors for the district court to consider in deciding if consolidation is appropriate include (1) whether the actions are pending before the same court, (2) whether common parties are involved in the cases, (3) whether there are common questions of law and/or fact, (4) whether there is risk of prejudice or confusion if the cases are consolidated, and if so, is the risk outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, and (5) whether consolidation will conserve judicial resources and reduce the time and cost of trying the cases separately. *Rodriguez v. Torres*, Nos. Civ. B-04-036, B-04-037, and B-04-043, 2004 WL 2952612, *1 (S.D. Tex. Nov. 22, 2004), *citing Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1531-32 (5th Cir. 1983); *Russo v. Alamosa Holdings, Inc.*, No. Civ. A. 5:03-CV-312-C, *et al.*, 2004 WL 579378, *1 (N.D. Tex. Feb. 27, 2004). Another factor is whether the cases are at the same stage of preparation for trial. *St. Bernard*

*General Hosp., Inc. v. Hospital Service Assoc. Of New Orleans, Inc.*, 712 F.2d 978, 990 (5th Cir. 1983), *cert. denied*, 466 U.S. 970 (1984).

The Fifth Circuit pronounced in *Shafer v. Army & Air Force Exchange Serv.*, 376 F.3d 386, 395 (5th Cir. 2004), op. clarified on other grounds, Nos. 03-10074 and 03-10220, 2004 WL 672 (5th Cir. June 28, 2004),

> The Supreme Court and this court, however, have stressed frequently the importance of *not* intermingling consolidated claims . . . . *See, e.g., Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933) ("[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge suits into a single cause or change the rights of the parties."); *Frazier . . .[,]* 980 F.2d [at 1532]("[A]ctions maintain their separate identity even if consolidated."); *McKenzie v. U.S.*, 678 F.2d 571, 574 (5th Cir. 1982)("[C]onsolidation does not cause one civil action to emerge from two."). Instead, courts have emphasized that following consolidation, it is vital that "the two suits retain their separate identities" even to the point that each requires "the entry of a separate judgment." *Miller v. U.S. Postal Service*, 729 F.2d 1033, 1036 (5th Cir. 1984). This strict segregation of merged cases is necessary to prevent consolidation from "depriv[ing] a party of any substantial rights that he may have had if the actions had proceeded separately." *Id.*

*See also Harcon Barge Co. V. D & G Boat Rentals, Inc.*, 746 F.2d 278, 287 (5th Cir. 1984)(Consolidation may not deprive the parties of any substantive rights they may have had if the actions had not been consolidated, but had proceeded separately.), *cert. denied*, 479 U.S. 930 (1986); *In re Excel Corp,* 106 F.3d 1197, 1201 (5th Cir. 1997)("[C]onsolidation 'does not merge suits into a single cause, or change the rights of the parties, or make those who are

parties in one suit parties in another.'"), *cert. denied*, 522 U.S. 859 (1997).

## II.   The Motions to Consolidate

## A.  CSFB, Merrill, and Barclays Defendants' Motion to Consolidate

The CSFB, Merrill and Barclays Defendants assert that *Newby*, H-04-0087, and H-03-5528 are each class actions filed on behalf of the same class alleged in *Newby* and asserting virtually identical facts, claims, and legal theories.  They further point out that Defendants in all three actions have participated in all the discovery in *Newby,* had an opportunity to question all the witnesses deposed and had access to all the documents in the document depository.

Defendants first emphasize that all three actions "are inextricably linked."  Their complaints allege the same overarching theory of scheme liability to defraud purchasers of Enron securities and request the same damages arising from that scheme.

Second, the three suits involve common questions of fact.  They claim that the Bank Defendants engaged in or participated in the implementation of manipulative or deceptive devices to inflate Enron's profits and hide debt on its financial sheets and that they participated in a scheme to defraud or a course of business that operated as a fraud or deceit on purchasers of Enron securities.  Indeed the complaints in H-04-0087 and H-03-5528 incorporate by reference all of the allegations in the *Newby* complaint.

The three actions also share common questions of law, pleading the same scheme theory and basing their claims on the same statutes, i.e., §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5.

Fourth, argue the CSFB, Merrill and Barclays Defendants, the three suits assert the same damages theory, i.e., joint and several liability for all damages flowing from the alleged scheme as a whole.

Defendants maintain that the provisions of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") addressing apportionment of responsibility, special interrogatories for the jury, and rights of contribution buttress the argument for consolidation of the three suits for trial. *See* # 4836 at 8-17. Separate trials could result in inconsistent conclusions about damages or apportionment of responsibility for damages.

Lead Plaintiff supports the motion to consolidate H-03-5528 and H-04-0087 with *Newby* for trial as long as the consolidation does not change the Court's prior ruling that H-04-0087 was a "new case" governed by the extended statute of limitations in the Sarbanes-Oxley Act, 28 U.S.C. § 1658(b)(extending statute of limitations for private securities fraud suits to shorter of two years from date of discovery or five years from date of transaction). *In re Enron Corp. Sec. Litig.*, No. H-04-0087, 2005 U.S. Dist. LEXIS 4120, *45 (S.D. Tex. Dec. 22, 2005)("The Court finds that the claims here were not time-barred

under *Lampf*,[3] when Sarbanes-Oxley was enacted nor are they time barred under Sarbanes-Oxley . . . .").[4]

## B.  Lead Plaintiff's Motion to Consolidate H-04-0088 with *Newby* for Trial

The only claim still pending against Goldman Sachs, the sole remaining defendant in H-04-0088, is brought under § 11 of the Securities Act of 1933, based on the same offering as a § 11 claim in *Newby* against Jeffrey Skilling and other individuals. Lead Plaintiff urges that having two trials based on the same financial statements and the same registration statement with many of the same witnesses on behalf of the same class of plaintiffs would be a waste of judicial and litigant resources.

### III.  Opposition

_____

[3] *Lampf, Plava, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991).

[4] The *Newby* action was filed on October 22, 2001 against Enron and some of its officers and directors.  After appointment of Lead Plaintiff and Lead Counsel, a consolidated complaint adding *inter alia* claims against CSFB, Merrill, and several financial institutions, was filed on April 8, 2002.  An amended consolidated complaint was filed on May 14, 2003, again adding defendants, but not the Royal Bank of Scotland Group plc, National Westminster Bank Plc, Greenwich NatWest Structured Finance inc. (Dissolved), Greenwich NatWest Ltd., and Campsie Ltd. (collectively, "RBSG").
On December 2, 2003 the Regents filed a new action against RBSG and Toronto Dominion Bank, H-03-5528.  RBSG emphasizes that RBSG was not sued until more than two years after the commencement of *Newby* and some twenty months after most of the principal defendants had been named.
On January 9, 2004 the Regents filed another action, H-04-0087, against another new participant, the Royal Bank of Canada and affiliates (collectively, "RBC"), which included  Royal Bank of Canada, Royal Bank Holding Inc., Royal Band DS Holding, Inc., RBC Dominion Securities Ltd., RBC Dominion Securities, Inc., RBC Holdings (USA) Inc., and RBC Dominion Securities Cor. (collectively, the "RBC Defendants" or "RBC").  The Court has denied RBC's motion to dismiss (#16, 43) in this action.

**A.  Opposition to CSFB, Merrill, and Barclays Defendants' Motion**

**1.  RBSG's Opposition to Consolidation (#5094)**

Defendants the Royal Bank of Scotland Group plc, National Westminster Bank Plc, Greenwich NatWest Structured Finance inc. (Dissolved), Greenwich NatWest Ltd., and Campsie Ltd. (collectively, "RBSG")[5] concede that there are questions of fact and law in common and tie-ins among the cases.  Nevertheless they contend that the pleading against RBSG is "a de facto amendment to the governing *Newby* complaint, with Regents filing against RBSG under a new docket number solely as a stratagem to evade certain time bar implications by posturing the claim as a 'new proceeding' to get the benefit of lengthened periods of limitations and repose under the intervening Sarbanes-Oxley Act."  #5090 at 4.[6]

RBSG emphasizes that unlike in *Newby*, in the Regents' action against RBSG and Toronto Dominion Bank,[7] H-03-5528, filed on December 2, 2003, the Regents did not seek appointment of itself as Lead Plaintiff nor appointment of Lerach Coughlin as Lead Counsel under the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B).  Nor did the Regents pursue the public notice requirements that would have been applicable under the PSLRA if it were asserting a new and different claim.  *See* 25 U.S.C. § 78u-4(a)(3)(A)(public notice not required for additional actions "asserting substantially the

---

[5] RBSG Defendants are named Defendants, along with the Toronto Dominion entities, in H-03-5528.

[6] Defendants have challenged this stratagem in a motion to dismiss, currently pending.

[7] Although some parties hyphenate "Toronto-Dominion," because that bank does not do so, the Court follows its model.

same claim or claims"). Instead the Regents merely described the case as involving claims already part of *Newby*.

RBSG Defendants oppose the motion to consolidate (#4989) on the grounds that the case against them, H-03-5528, has been on a vastly different schedule for over two years from that in the *Newby* action against CSFB and Merrill. Still pending in H-03-5528 are motions to dismiss filed by Toronto Dominion (#17) and RBSG (#42).[8] The statutory stay on discovery under 15 U.S.C. § 78u-4(b)(3)(B) has resulted in limited and incomplete discovery in H-03-5528. Moreover, this fall Lead Plaintiff requested that the Court defer ruling on these and other motions until several weeks after the deposition of Andrew Fastow (#5057 in H-01-3624). Furthermore the Court entered an agreed order setting a schedule for expert discovery for the consolidated and coordinated cases that is different from the schedule governing the *Newby* case against the original financial institution defendants. The relevant expert discovery schedule begins as to RBSG only upon completion of fact discovery. Furthermore, no class certification has been determined with the participation of, and related to claims against, RBSG. In addition, motions for summary judgment have been filed in *Newby*, which is set for trial on April 9, 2007. Moreover, Lead Plaintiff's Trial Plan filed in *Newby* (#4729) did not include RBSG. Consolidation now would seriously and prejudicially undermine any trial preparation that could be made

---

[8] RBSG states that its motion addresses various time bars, including whether the claims against it should be regarded as part of the *Newby* proceeding or as an entirely different proceedings, as well as the absence of a primary violation.

by RBSG.  RBSG contends that the procedural circumstances raised by Movants (apportionment/contribution issues, special jury interrogatories,  etc.) cannot overcome the unfairness and prejudice to RBSG that will result from consolidation.  Evidence against RBSG can still be considered by the jury even in the absence of RBSG from the trial.

## 2.   Non-Party[9] Toronto Dominion's Opposition to Consolidation (#5091)

Non-parties the Toronto Dominion Bank, Toronto Dominion Holdings (U.S.A.), Inc., TD Securities Inc., and TD Securities (USA) LLC's (f/k/a Toronto Dominion (Texas))(collectively "Toronto Dominion") also focus upon the different stage of litigation of H-03-5528.  Noting that the only claim against Toronto Dominion is under the 1934 Act based on its participation in six prepaid commodity swaps with Enron.  Discovery has been stayed under the PSLRA by Toronto Dominion's pending motion to dismiss.  Though a putative class action, no motions have been made by plaintiff as to a lead plaintiff, lead counsel, or class certification.

Contending that the motion to consolidate is premature, Toronto Dominion maintains that its motion to dismiss must be resolved before the court can consider the motion to consolidate and urges that its motion to dismiss is meritorious, especially in the context of the Court's ruling on Barclays' motion for partial summary judgment on the pleadings.  #4874, entered 7/20/06, also

---

[9] Toronto Dominion entities characterizes themselves as a "non-parties" because the motion to consolidate was filed only in *Newby*, to which Toronto Dominion entities are not parties.  They are Defendants in H-03-5528.

available at *In re Enron Corp. Sec. Litig.*, 439 F. Supp. 2d 692 (S.D. Tex. 2006).  The Court is reconsidering on summary judgment whether a primary violation of § 10(b) and Rule 10b-5, as opposed to mere nonactionable aiding and abetting, has been stated against Barclays because Lead Plaintiff never had an opportunity to replead after intervening and relevant cases with more specific pleading requirements were issued.

Even if the Court entertains the motion to consolidate now, like RBSG, Toronto Dominion contends that it should be denied because the more advanced procedural posture of *Newby* would cause undue prejudice to Toronto Dominion.  *Mills v. Beech Aircraft Corp.*, 886 F.2d at 762; *St. Bernard Gen'l Hosp., Inc. V. Hospital Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989-90 (5th Cir. 1983).

Toronto Dominion additionally argues that *Newby* and H-03-5528 do not have sufficiently common issues of fact and law to support consolidation.  The factual allegations of specific wrongdoing, though falling under the same statute and relating to the same *Ponzi* scheme, are not identical to those against other financial institutions in *Newby*, insists Toronto Dominion.  While Lead Plaintiff has charged the financial institution Defendants in *Newby* with eight or nine different kinds of transactions, it asserts only one kind of transaction against Toronto Dominion, the prepay transactions, specifically the December 1998 Truman, Jethro, Alberta, and London prepays, none of which will be at issue in the trial on *Newby* and none of which overlap with the

*Newby* transactions.   Nor are the counterparties[10] in Toronto Dominion's prepay transactions also defendants in *Newby* because they have all settled, been dismissed or were never sued in *Newby*. Toronto Dominion maintains that there would be no common documents, facts, witness or other evidence between the two suits. Thus consolidation would render the litigation unmanageable and unfairly prejudice the defendants.

Toronto Dominion further contends the claims are different.  While the Toronto Dominion/RBS action brings only a single Rule 10b-5 claim under the 1934 Act, *Newby* also asserts claims under §§ 11 and 15 of the 1933 Act, while the *Goldman Sachs* action alleges only a § 11 claim.  Such claims require proof of different elements, especially proof of scienter for the § 10(b) claims.  Trying the claims together risks having the jury confused or ignoring the requirement of scienter in the § 10(b) claims.

Toronto Dominion also argues that the legal issues are different, as evidenced by Lead Plaintiff's conditioning its consent on the Court's prior ruling (#43 at 31-36 in H-04-0087) that Sarbanes-Oxley's extended statute of limitations applies to the claims against RBC, and that ruling should also govern the claims against Toronto Dominion in H-03-5528.  Toronto Dominion has asserted in its pending motion to dismiss that the shorter *Lampf* statute of limitations applies and the claims are time-

---

[10] Identified by Toronto Dominion as JP Morgan Chase, Citigroup and/or Barclays.  The Alberta prepay was not included in *Newby*; Morgan Stanley, which was the counterparty to the London prepay, was not used in *Newby*; and Citigroup and Barclays, two of the three counterparties to the Nixon prepay, were dismissed from *Newby*, while RBS was not sued in *Newby.*

barred by the statute of repose; it objects to any automatic application of the ruling in the RBC case to H-03-5538, without court review of its motion to dismiss, which it is confident will prevail.  It also contends that in an earlier ruling this Court suggested that if consolidation were granted, the pre-Sarbanes-Oxley periods of limitation would apply to claims against RBC as well as the *Newby* defendants.  *See* #1999 at 54-55 in *Newby* ("[W]e doubt that Congress intended that courts would apply different sets of substantive and procedural rules to groups of plaintiffs asserting identical claims in a single action . . . .")(*quoting Gerber v. MTC Electronic Technologies Co., Ltd.*, 329 F.3d 297, 309-10 (2d Cir.), *cert. denied*, 124 S. Ct. 432 (2003)).

In addition, Toronto Dominion points out that *Newby* and H-03-5528 involve different parties and therefore consolidation may cause prejudice.  At the time that Toronto Dominion filed its opposition, *Newby* had over fifteen defendants, including Arthur Andersen, Vinson & Elkins, and former Enron executives, while the cases against Toronto Dominion, RBS, RBC and affiliates, and Goldman Sachs had one defendant or limited defendants and their roles were as "minor participants" for whom consolidation would mean throwing them in with persons convicted of Enron-related fraud, creating jury confusion, and causing Toronto Dominion undue prejudice.

Toronto Dominion disagrees with the Financial Institutions' claim that the PSLRA's rules on apportionment, jury interrogatories and contribution mean that the cases must be tried together, that separate trials bring "the virtual certainty" of

inconsistencies, and that separate trials would be a waste of judicial and party resources.   Neither the common law nor federal securities laws require that a plaintiff sue all alleged joint tortfeasors in a single suit.   Not only is the assertion of possible jury verdict inconsistencies too speculative and remote to justify consolidation, but there is no requirement of consistency among verdicts as long as each verdict is supported by the evidence.   *See, e.g., Borel v. Fibreboard Paper Prod. Corp.*, 493 F.2d 1076, 1094 (5th Cir. 1973)("It has long been the rule that consistency in general verdicts is not required"; finding that internal inconsistencies in verdicts are permissible if evidence can be found to support each finding); *United States v, Espinosa-Cerpa*, 630 F.2d 328, 332 (5th Cir. 1980)(inconsistencies are permissible "even among multiple defendants tried together on essentially the same evidence and charges" since "each verdict or conviction is to be reviewed wholly independently of the others").   Morever, insists Toronto Dominion, conservation of resources may be a benefit of pre-trial consolidation, but at the trial stage, the concern is focusing the jury's attention on the specific elements and specific claims against specific defendants and in minimizing the potential for jury confusion.   Lumping numerous claims and parties that have nothing to do with one another runs a serious risk of jury confusion.

## 3.   Opposition of the RBC Defendants (#5094)

Royal Bank of Canada, Royal Bank Holding Inc., Royal Bank DS Holding, Inc., RBC Dominion Securities Ltd., RBC Dominion Securities, Inc., RBC Holdings (USA) Inc., and RBC Dominion

Securities Cor. (collectively, the "RBC Defendants" or "RBC") also oppose the Financial Institutions' motion to consolidate for trial. Complaining that the Regents waited almost twenty-seven months after the filing the *Newby* action before suing RBC in a complaint dated January 9, 2004 so that they are substantially behind Movants procedurally and in discovery with respect to trial preparation,[11] RBC maintains that trying the four cases together would be "unwieldy, confusing and prejudicial and inevitably would result in substantial delay in *Newby*, set for trial in April, since they do not have a trial date yet. RBC further asserts that in light of the Court's order, #4874, there is no viable claim that RBC is a primary violator of the securities laws, and the Court should resolve the motions pending before it considers consolidation. RBC urges that consolidation is not warranted merely because claims are brought under the federal securities laws; the real issue is whether facts can be proven at trial to establish with evidence every element of each cause of action charged with respect to each defendant. RBC basically reiterates the reasons given by other parties to oppose the  motion for consolidation, including that the actions are in different procedural postures, involve different transactions, different

---

[11]   Emphasizing that the *Newby* action is on an entirely different track than H-04-0087, RBC highlights the facts that the Regents waited until October 2006 to file a motion for class certification; the Court has granted an agreed motion (#112, 115) to extend the response deadline to February 25, 2007, and the reply deadline to April 4, 2007; and that a hearing on class certification would be required.   Expert discovery has not commenced.   RBC has a pending motion to dismiss.   Unlike *Newby*, this action has not reached summary judgment stage.

facts, different witnesses, jury confusion if tried in one mass, complicated, long trial, delay in the *Newby* trial, and application of the shorter *Lampf* statute of limitations (one year after discovery of wrongdoing or three years after the unlawful transaction occurred), in effect before Sarbanes-Oxley, which would result in dismissal of claims arising from all but one transaction in which RBC was involved.  RBC also argues that the Court's earlier ruling on the statute of limitations defense in the RBC case cannot be a bargaining chip for Lead Plaintiff's consent to the consolidation.   Regarding Lead Plaintiff's conditional consent to consolidation, RBC contends that Lead Plaintiff did not add RBC as a defendant in *Newby* so as to avoid a limitations bar and dismissal of RBC; now Lead Plaintiff recognizes that consolidation of this action into *Newby* would reinvigorate RBC's arguments that the claims against RBC are time-barred so Lead Plaintiff cynically offers up its consent to consolidation in return for stripping RBC of its opportunity to full adjudicate the limitations issues.   RBC asks the Court to rule on its pending motion for judgment on the pleadings (#81) before considering consolidation.

**4.   Opposition of Goldman Sachs & Co. (#85 in H-04-0088)**

Insisting that consolidation would be inconsistent with the Court's certification of a "scheme class" in *Newby*, Goldman Sachs objects that H-04-0088 disclaims any allegations of fraud while *Newby* is "about nothing but fraud."   #85 at 1.   The *Ponzi* scheme allegations against those in *Newby* have nothing to do with the single claim against Goldman Sachs, as evidenced by the

express language of the Complaint, filed on February 6, 2004:  ¶ 92 states that "plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this claim is based solely on claims of strict liability and/or negligence under the 1933 Act."  Plaintiff Nathaniel Pulsifer claims instead that a single Registration Statement and Prospectus for a single, August 1999 underwriting of $255 million of Enron Notes exchangeable into common stock of Enron Oil & Gas contained false and misleading statements for which underwriter Goldman Sachs is strictly liable under Section 11 of the Securities Act for failure to conduct appropriate due diligence.  There is no allegation of a fraudulent scheme.  The Trial Plan (#4729) addressed the fraudulent scheme that does not apply to the non-fraud claim against Goldman Sachs in H-04-0088.  Thus consolidation would be improper because the two cases do not share common issues of law, fact, witnesses, or other proof.  It further charges that Movants have failed to meet their burden of proof to show common issues of law or fact between the cases, no less a predominance of common issues.  Goldman Sachs insists that the documents recently submitted by the Regents and others relating to the sentencing of Andrew Fastow, including Fastow's declaration (#5048), which does not mention Goldman Sachs, reflect its non-involvement in the *Newby* scheme.

Goldman Sachs further contends that it would be greatly prejudiced and its constitutional right to a fair trial violated by consolidation.  The spillover effect of evidence of fraud at trial, even though the evidence would be inadmissible as to

Goldman Sachs, would irreparably taint any trial against Goldman
Sachs.  Goldman Sachs never had an opportunity to oppose any class
certification in violation of its due process rights; the recently
filed motion for class certification in H-04-0088 identifies a
class much narrower than the class in *Newby* and is composed only
of those that purchased Exchangeable Notes between August 1999 and
November 2001.

As for practical concerns, *Pulsifer*, filed two years
after *Newby*, could not be ready for trial with *Newby*.  The Regents
only recently filed a motion to be appointed lead plaintiff (for
which appointment Goldman Sachs insists it is unqualified because
it did not purchase any Exchangeable Notes), as well as the motion
for consolidation.  Fact discovery has just begun and expert
discovery is months away.

**B.  Replies and Sur-replies**

**1.  Lead Plaintiff's Replies to RBC (#5103 in *Newby*), Non-parties
the Toronto Dominion Defendants (#5104), and RBS (#5105).**

In identically worded replies, Lead Plaintiff responds
that it believes Defendants should be ready to try their actions
with *Newby* by April 2007 and that it is willing to shorten
procedural deadlines to expedite discovery.  If the Court decides
against consolidation, it requests that the Court maintain the
current April 9, 2007 trial date for *Newby*.

**2.  Lead Plaintiff's Reply to Goldman Sachs (#5135 in *Newby*)**

Insisting that non-fraud § 11 claims regarding
securities offerings are already part of the *Newby* case so
consolidation will not undermine the certification of the class,

Lead Plaintiff points out that *Newby* Plaintiffs are pursuing a §
11 claim against Jeffrey Skilling and Richard Causey based on the
same offering as the § 11 claim against Goldman Sachs.[12]  Nathaniel
Pulsifer, the proposed class representative in H-04-0088, has
previously been certified as a class representative in *Newby* based
on his purchase of the 7% Exchangeable Notes.  Lead Plaintiff
argues that since the same financial statements and the same
registration statement for the offering are at issue in both
cases, there is no reason not to try them at the same time.  If
the Court disagrees, Lead Plaintiff requests that the trial date
for the *Newby* action remain on April 9, 2007.

As for any prejudice that might result from introduction
of evidence not admissible against Goldman Sachs, Lead Plaintiff
insists that the Court can easily instruct the jury about the
proper scope and use of the evidence.

As for the statutory discovery stay, the Court can issue
a decision on Toronto Dominion's motion to dismiss after
consolidation with *Newby* for trial.

Lead Plaintiff further points out that the scheme
allegations in *Newby* have been incorporated by reference into the
other complaints.  All Defendants participated in the same scheme,
even if in different transactions.  Many of the crucial

---

[12] Financial Institutional Defendants point out that all claims
for violations of §§ 11 and 15 of the Securities Act of 1933
asserted in *Newby* against the financial institutions have been
settled or dismissed, leaving only § 10(b) claims against the
financial institution.  #5124 at 11.  Nevertheless § 11 claims
remain pending against individuals in *Newby*.  They note that Rule
42(a) does not require complete identity of legal and factual
questions.

transactions involved one or more banks and one or more of the opposed Defendants.  The nature of the scheme allegations, moreover, ties these transactions to one another and to other Defendants in *Newby*.  Thus the scheme allegations and the need for a proportionate allocation finding makes a single trial the most expedient means for resolving claims against Defendants. (Moreover even without consolidation, there would not be simple, pared-down, independent suits because evidence would inevitably have to be presented about the involvement of multiple parties, transactions, and financial disclosures.)  Whether tried together or separately, a jury is required under the PSLRA to determine proportionate responsibility of all parties.  Efficiency and judicial economy will thus be served by consolidation. Furthermore, multiple trials could produce inconsistent conclusions about the apportionment of responsibility or the amount of damages for which any party is responsible; conflicting judgments could prove problematic if new trials for contribution are required to resolve them, causing additional litigation on the same issues.

**3.  *Newby* Financial Institution Defendants' Reply (#5124)**

Financial Institution Defendants insist that all the objections raised in opposition to their motion are insufficient to deny consolidation.  First, they insist the same facts regarding the conduct of those Defendants, as well as of other Defendants, will be presented at every trial involving the alleged scheme.  The *Newby* Financial Institution Defendants, RBC, Toronto Dominion and RBS will each present that evidence in order to

satisfy the allocation of fault provisions of the PSLRA, 15 U.S.C,
§ 78u-4(f)(3).  Thus if any Defendant proceeds to trial, it is
clearly in the interests of judicial economy to present that
mountain of evidence once, to one jury, in one trial.

Second all the cases involve the same claim for damages
based on overlapping transactions that are purportedly part on the
single scheme.  For example, in *Newby* and H-03-5528, the
complaints assert that Enron's financial statements were
materially misstated as a result of the prepay transactions.
Toronto Dominion, RBS, and Credit Suisse First Boston allegedly
participated in such prepay transactions, even if not the same
ones:  the same disclosures are at issue, implicating the same
accounting rules, the same review by Arthur Andersen, the same
actions by Enron management, and the same claim for damages, all
supporting consolidation.

Third, consolidation will not prejudice these parties
because each had access to and participated in all of the
discovery in *Newby* from all parties, with the only remaining
discovery to be taken from RBC, Toronto Dominion, and RBSG (which
is also needed for *Newby*), and given that so much discovery has
been taken, they will not be prejudiced by consolidation.  This
Court can fashion an expedited schedule to accommodate discovery
needs of all the parties prior to trial.

Financial Institution Defendants also observe that Lead
Plaintiff's theory of damages is identical for all remaining
financial institution defendants in the three cases; Lead
Plaintiff alleges that all are jointly and severally liable for

all damages that result from the alleged scheme, including damages caused by transactions in which a given bank has no involvement and about which it had no knowledge.  Thus for this reason the cases should be consolidated.

As for the argument that the cases are at different stages of litigation, Financial Institution Defendants call these claims overstated and maintain that they can be accommodated by means of a scheduling order in *Newby*.  The parties have all participated in the *Newby* discovery.  The limited additional discovery to be conducted in the other cases is the offering of their own party witnesses and experts on their own behalf.  The lack of bank-specific discovery in the coordinated actions is to the Defendants' advantage.  Similarly, just because classes have not been certified in the consolidated cases does not preclude consolidation.  *Benzoni v. Greve*, 54 F.R.D. 450, 452 (S.D.N.Y. 1972)(consolidating cases brought on behalf of "substantially" the same classes, prior to certification).  Indeed, the class certification in *Newby* is on appeal and no notice has been sent to the class.  The Financial Institutions observe that if a class is finally approved, RBC, Toronto Dominion, and RBS will probably be confronted by the same class and the same class representatives and can easily be incorporated into any notice to that class. Lead Plaintiff's Trial Plan also references RBC, Toronto Dominion and RBS and Lead Plaintiff is expected to used the same Trial Plan, the same witnesses, and the same experts against them at trial.  If the Court orders consolidation, insist Financial Institution Defendants, it can easily fashion a discovery and

motion schedule fair to all parties, so as to avoid any prejudice to these parties  On the other hand, there would be substantial prejudice to the *Newby* defendants, the Court, and the jurors if "Lead Plaintiff's allegations of a single overarching 'scheme' and a single undifferentiated pot of damages as well as the defenses to those allegations, get presented in a mish-mash of multiple trials, with shifting burdens of proof based on who happens to be a named defendant in each proceeding."  #5124 at 15-16.

Lead Plaintiff also argues that Toronto Dominion's pending motion to dismiss can be addressed after consolidation since it does not challenge this Court's jurisdiction.

**4.  Non-Parties the Toronto Dominion Defendants' Sur-Reply (#5118)**

Reiterating their earlier arguments against consolidation, Toronto Dominion Defendants contend that shortening deadlines would only exacerbate the prejudice to them, especially because of the statutory stay on discovery until the Court rules on their motion to dismiss.  They insist that consolidation cannot shorten the time for discovery under applicable rules and cannot prejudice a party's substantive legal rights.  *Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 762 (5th Cor. 1989)(consolidation improper where cases filed two years apart; first was ready for trial and second required additional fact and expert discovery); *In re Air Crash Disaster at Florida Everglades on December 29, 2972*, 549 F.2d 1006, 1013 n.9 (5th Cir. 1977)(finding that the "principal limitation" on the use of Rule 42 is that district courts "must avoid prejudicing the rights of the parties").

**5.  RBC Defendants' Statement of Subsequent Developments (#5232)**

RBC Defendants point to post-briefing developments in *Newby* in support of denial of the *Newby* Financial Institution Defendants' motion to consolidate:  (1) Movants' designation of responsible non-parties, pursuant to this Court's order (#4836), has preserved the issue of fault allocation without jury confusion or prejudice to RBC; and (2) the deposition of Andrew S. Fastow, which only minimally dealt with RBC, reflecting RBC's minor role generally and its nonparticipation in structuring the prototype transactions or underwriting key off-balance-sheet partnerships employed by Enron to misrepresent its financial performance to investors, confirms the potential for jury confusion and prejudice to RBC if the RBC action were consolidated with *Newby* for trial.

RBC focuses on a September 2000 transaction designated "Alberta," which RBC insists is not like the other prepay transactions in the furtherance of Enron's misconduct with which Lead Plaintiff has charged RBC.  RBC argues that Fastow's deposition testimony demonstrated the difference between Alberta and other prepay transactions.  RBC contends that a jury must have the opportunity to hear and consider evidence about Alberta without having that record affected by evidence of dissimilar transactions charged in *Newby*, as would happen if consolidation is ordered.

## IV.  Court's Decision

Movants have presented a number of good reasons for consolidating these cases for trial, including common factual and legal issues, witnesses, proof, and especially the

apportionment/contribution scheme under the PSLRA and the possibility of inconsistent verdicts without consolidation. Nevertheless, for whatever reason the Regents filed these coordinated and consolidated cases years later than *Newby*, they must live with the consequences of that time gap. In concurrence with the opposition presented here, the Court finds that the procedural tracks of the cases are too disparate for consolidation with *Newby* at this late date. The parties in the consolidated and coordinated cases are entitled to full discovery, an opportunity to file motions for summary judgment, and adequate trial preparation time, all of which would have to be severely curtailed if the Court consolidated the cases and retained the current trial date. Lead Plaintiff has made clear that it desires the April 9, 2007 trial date above all. Although those seeking consolidation glibly state that this Court can modify and expedite the scheduling order, rule on the pending motions to dismiss, motions for judgment on the pleadings, motions for appointment of Lead Plaintiff and Lead Counsel, and motions for class certification and keep the April 9, 2007 trial date, they ignore not only the extensive briefing relating to these motions, but the multi-box motions for summary judgment now pending in *Newby*. Unlike the large law firms representing parties in this litigation, the Court's staff is limited. For these reasons, the Court

ORDERS that (1) Financial Institution Defendants' motion to consolidate for trial (#4989 in *Newby*) the *Newby* action, H-04-0087, and H-03-5528 and (2) Lead Plaintiff's motion to consolidate *Newby* and H-04-0088 for trial (#69 in H-04-0088; #5022

in H-01-3624) are DENIED.

SIGNED at Houston, Texas, this 7th day of February, 2007.


MELINDA HARMON
UNITED STATES DISTRICT JUDGE